**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LISA SALMONS, on behalf of herself and all others similarly situated, <br> 77 Hobson St. <br> Stamford, CT 06902 <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL RAILROAD PASSENGER CORP., d/b/a AMTRAK, <br> 1 Massachusetts Ave., NW <br> Washington DC 20001 <br><br> Defendant. | Civil No. _____ <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

**PRIVATE ATTORNEY GENERAL AND CLASS ACTION COMPLAINT**

Plaintiff Lisa Salmons, individually and on behalf all others similarly situated, brings this Class Action Complaint against Defendant National Railroad Passenger Corp., which does business as Amtrak. Plaintiff alleges the following based upon personal knowledge (as to all facts related to herself) and her counsels' investigations.

**I. INTRODUCTION:**

1. This proposed class action concerns monetary damages that Plaintiff and a class of consumers residing nationwide suffered as a result of purchasing travel insurance through Amtrak's website. As noted in more detail below, Amtrak's website encourages ticket purchasers to protect their trip with travel insurance provided by Allianz—the third-party insurer partnered with Amtrak to offer travel insurance exclusively through Amtrak's website. Amtrak does not disclose, however, that it has a financial interest in the travel insurance and, in fact, receives an

illegal kickback from the insurer in exchange for brokering the insurance sale. Plaintiff alleges that Defendant's website misled her into paying for the cost of that illegal kickback, and that Defendant is therefore liable for these damages, among other things.

2. Plaintiff brings this action on behalf of the Class for equitable relief and to recover damages and restitution for Amtrak's violation of the District of Columbia Consumer Protection Procedures Act,[1] as well as for conversion, unjust enrichment, and fraudulent concealment.

3. Plaintiff acts for the benefit of the General Public as a Private Attorney General for claims in this action arising under the CPPA, which expressly authorizes an individual to act "on behalf of both the individual and the general public … seeking relief from the use of a trade practice in violation of a law of the District when that trade practice involves consumer goods or services that the individual purchased…." D.C. Code § 28-3905(k)(1)(B).

## II. PARTIES, JURISDICTION, AND VENUE:

4. Plaintiff is an individual who is domiciled in, and thus a citizen of, Connecticut.

5. For jurisdictional purposes, Amtrak is a citizen, only, of Washington, D.C. 49 U.S.C.A. § 24301(b).

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (d)(2)(A) because this is a class action for a sum exceeding $5,000,000, exclusive of interest and costs; because there are more than 100 members of the proposed class; and because Plaintiff and Amtrak are citizens of different states (*a fortiori*, Defendant and at least one class member are citizens of different states).

---

[1] D.C. CODE ANN. § 28-3901 *et seq.* (West).

7. This Court has general personal jurisdiction over Amtrak because, among other things, Amtrak's principal place of business is located in this District. 49 U.S.C. § 24301(b). This Court also has specific personal jurisdiction over Amtrak because: (a) the causes of action at issue here arise from Amtrak's conducting business in this District and (b) the complained-of conduct occurred in this District. Further, by registering a service agent in this District, Amtrak has consented to personal jurisdiction in this District.

8. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b)(1), (2), and (3) because (a) Defendant resides in this District; (b) a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in this District; and (c) because Amtrak is subject to personal jurisdiction in the District.

### III. FACTUAL ALLEGATIONS:

#### A. Amtrak receives illegal kickbacks from the travel insurer that Amtrak promotes on its website.

9. Travel or trip insurance essentially covers any added costs or lost payments that an individual might incur while on a trip or planning a trip. For example, if a consumer is forced at the last minute to switch or cancel a train trip, then travel insurance will cover any ticket-switching fees or—if necessary—the otherwise-lost cost of the train ticket.

10. Almost every state in the nation requires the insurance agents operating within their borders to be licensed, which allow states to ensure—among other things—that the agent is subject to regulation; that the agent helps bear the cost of that regulation; and that the agent is sufficiently qualified to sell a product as potentially complicated and significant as insurance. Consequently, almost every state in the country, including the District of Columbia, forbids unlicensed individuals and entities from acting as insurance brokers or receiving money for

insurance brokering. *See* D.C. Code Ann. § 31-1131.03 (West). Yet, Amtrak is not licensed in Washington D.C., nor any other jurisdiction.

11. Despite these prohibitions, transportation companies have come under fire for receiving undisclosed, illegal brokerage fees—i.e., kickbacks—from the travel-insurance companies that they promote on their websites. In August 2018, United States Senator Edward J. Markey released a report detailing this practice, which—in addition to being illegal under state law—is inequitable for several reasons, including: travel insurance is typically only necessary, in the first place, because the transportation companies themselves have begun charging exorbitant switching and cancelation fees; the insurance that these companies promote is often significantly inferior to the insurance that's available on the open market (i.e., it offers less coverage and presents significant obstacles to reimbursement); and travel-insurance kickbacks now constitute an illegal but significant "profit center" for these transportation companies—one that's being unknowingly funded by consumers.[2]

12. Defendant Amtrak engages in the type of unlicensed insurance brokering described in the Markey Report. Throughout the class period, Amtrak—which is not a licensed insurance agent anywhere in the U.S.—urged its passengers, via its website, to buy travel insurance from Allianz.[3] If a passenger in fact opted for coverage, they would pay a certain sum to the insurer in exchange for the travel insurance. That sum, however, included an undisclosed fee that the insurer would then pay back to Amtrak, or allow Amtrak to retain, in exchange for helping broker the insurance sale; i.e., Amtrak was paid an illegal brokerage fee.

---

[2] *See* OFFICE OF SENATOR EDWARD J. MARKEY, FLYER BEWARE: IS TRAVEL INSURANCE WORTH IT? (2018), available at https://www.markey.senate.gov/imo/media/doc/Flyer%20Beware.%20Report.pdf

[3] More specifically, Allianz Global Assistance, Jefferson Insurance Company or Nationwide Mutual Insurance Company, and BCS Insurance Company.

13. Amtrak did not, however, disclose to consumers that it was receiving these kickbacks, and its website misled consumers into unknowingly funding its improper brokerage fees, as described in more detail, below.

**B. Amtrak misleads consumers into funding its illegal brokerage fees.**

14. Amtrak provides rail service nationwide, including from various locations up and down the eastern seaboard, such as D.C., Philadelphia, New York City, and Boston. As part of its business, Amtrak sells tickets to customers through its website, www.Amtrak.com.

15. When a customer visits Amtrak's website, the site allows the customer to select their preferred destination and travel dates.

16. After the customer selects their specific train, Amtrak's website provides the customer with the price of that train.

17. Before the customer completes their purchase, Amtrak's website requires the customer to make an election regarding purchasing a travel-insurance policy with a third-party insurance provider.

18. There is no way to purchase a ticket on Amtrak's website without making an election regarding travel insurance.

19. Amtrak markets the third-party travel insurance to its customers in a uniform fashion—each customer sees the same marketing language when purchasing a ticket.

20. After the customer selects their desired train or trains and enters their personal information, the customer reaches the "Travelers" page. This page asks consumers for their contact and information and includes, toward the bottom of the page, a section titled "IMPORTANT: PROTECT YOUR TRIP," which requires consumers to decide whether to purchase travel insurance.

5

21. The travel-insurance section contains two options for consumers to pick from: "Yes! Protect my trip for just $[X]" or "No, I choose not to protect my trip to [city]," which is followed by the warning: "I understand by declining protection I may be responsible for non-refundable expenses."

22. Amtrak describes the "Yes" option as "Highly Recommended" and then touts the benefits of its advertised travel insurance:

> **Compensation:** Get back up to 100% for covered trip cancellation and trip interruption
> **Peace of mind:** Insurance for loss, damage or theft of your belongings
> **Receive more:** Reimbursement for eligible meals and accommodations when your trip is delayed
> **Help when you need it:** 24/7 assistance in the event of a travel or medical emergency

23. Amtrak then quotes the Boston Globe as urging consumers to "Purchase travel insurance."

24. The bottom of the page notes that the policy being marketed and sold through Amtrak's website is offered by Allianz Global Assistance and underwritten by Jefferson Insurance Company or BCS Insurance Company. Amtrak also provides a link to Allianz's "Plan details and disclosures."

25. If a consumer opts to purchase travel insurance from Allianz, Amtrak will send the customer a ticket receipt. The receipt notes that the specific amounts charged for travel insurance are billed separately by Allianz, and that Amtrak is only billing the consumer for the costs of their train ticket:

> Amtrak will only charge your credit card the amount for rail fare, accommodations and ticket delivery. Your other travel options will be charged by our travel partner(s), and you will receive separate confirmation emails detailing those charges.

> **Travel Insurance** Your travel insurance request has been forwarded to our partner Allianz Global Assistance. You will receive an email from them confirming the details of your insurance purchase.

Amtrak then explicitly notes that the cost of the travel insurance is "Not Charged by Amtrak."

26. At no point during the process of purchasing travel insurance via its website does Amtrak disclose its financial interest in the sale of travel insurance to its consumers—either before, during, or after the consumer's transaction with Amtrak.

27. In addition, if a customer elects to buy travel insurance for a train trip, Allianz will send the customer an email containing a copy of the purchased insurance policy. Nowhere in that communication or accompanying insurance policy is there any reference to Amtrak receiving any payment in connection with the transaction. Amtrak's website also includes several links to Allianz materials that describe its travel insurance, none of which note that Amtrak receives any insurance-brokerage commissions.

28. At no point does Amtrak disclose to consumers that it receives a commission or kickback every time a customer elects to purchase travel insurance, or that the consumers are funding this kickback. At no point during the class period did Amtrak disclose to Plaintiff, or any of the class members, the true nature of its relationship with Allianz or any other entity associated with the travel insurance offered on Amtrak's website.

29. Further, by repeatedly indicating that Allianz will be the sole recipient of Plaintiff's travel-insurance payments (e.g., by noting that these entities would bill Plaintiff for the full amount of his travel-insurance costs), Amtrak's website misleadingly indicates—in the affirmative—that a consumer's travel-insurance costs are entirely passed through Allianz.

30. As a matter of federal statute, Amtrak is a citizen of—and its principal place of business is in—Washington, D.C. 49 U.S.C.A. § 24301(b). Amtrak formulated, executed, and

monitored its kickback scheme in D.C., where it approved and disseminated the marketing materials at issue, and where it received or retained its illegal insurance commissions, among other things. Its communications and other efforts to execute the scheme largely, if not exclusively, emanated from the District of Columbia.

31. For purposes of the scheme, the relationship between Amtrak and its customers, including Plaintiff, was centered in the District of Columbia since communications regarding travel insurance emanated from the District of Columbia; Plaintiff and class members sent payment to be received at Amtrak's headquarters in the District of Columbia; and Amtrak received its commission from Allianz in the District of Columbia.

### C. As a result of Amtrak's illegal brokerage fees, Plaintiff and the proposed class were damaged—including by being overcharged for travel insurance.

32. Had Amtrak disclosed that the price of the travel-insurance product on Amtrak's website incorporates an illegal commission paid to Amtrak (as opposed to being based solely on underwriting risk and insurer profit), Plaintiff would have not purchased the travel insurance and/or would have paid less for travel insurance.

33. On or around April 23, 2018, Plaintiff purchased a travel-insurance policy on Amtrak's website to cover her son's trip.

34. In purchasing her travel insurance, Plaintiff viewed and was exposed to Defendant's website.

35. After completing her purchase, Plaintiff received an email from Allianz attaching her policy, neither of which referenced Amtrak's receipt of an insurance-brokerage commission.

36. She also received a receipt from Amtrak noting that Allianz would bill her separately for her travel insurance, as described above.

37. Had Plaintiff been aware that a portion of the costs of her travel insurance was being used to fund an illegal kickback to Amtrak, she would not have paid for the travel insurance and/or would have paid less for travel insurance.

### D. Plaintiff's travel-insurance policy was purchased from Allianz and is unrelated to Amtrak's prices, rates, or services.

38. Amtrak provides no services to the customer in connection with the sale of travel insurance on its website.

39. Travel insurance is not a form of rail service.

40. The price of the travel insurance is a price offered or set by the insurer, not Amtrak.

41. No contractual relationship is formed between the customer and Amtrak in connection with a customer's purchase of travel insurance on Amtrak's website.

42. No bargained-for exchange takes place between the customer and Amtrak in connection with a customer's purchase of travel insurance on Amtrak's website.

43. Amtrak does not compete with other rail companies for insurance-brokerage services, which—in any event—it is prohibited from providing under state law.

## IV. CLASS-ACTION ALLEGATIONS:

44. Plaintiff brings this action pursuant to Rules 23(a), 23(b)(2) and 23(b)(3), and in the alternative Rule 23(c)(4), of the Federal Rules of Civil Procedure, individually, and on behalf of the following nationwide Class:

> All persons who purchased an Allianz travel-insurance policy on Amtrak's website. Excluded from this class are Amtrak, its affiliates, subsidiaries, agents, board members, directors, officers, and employees. Also excluded from the class are the district judge and magistrate judge assigned to this case, their staff, and their immediate family members.

45. This class action is brought pursuant to Rule 23(b)(2) because Amtrak has acted or refused to act on grounds generally applicable to all the members of the proposed class, making final injunctive relief or declaratory relief concerning the class appropriate.

46. This class action is also brought pursuant to Rule 23(b)(3) because the questions of law or fact common to Plaintiff's claim and the class members' claims predominate over any question of law or fact affecting only individual class members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

47. Given the potential complexity of this case, Plaintiff hereby seeks relief from the 90-day filing requirement set forth by Local Rule 23.1(b) and seeks that a schedule for the briefing of class certification be set forth at the initial scheduling conference of this matter.

**A. The proposed class satisfies the prerequisites of Rule 23(b)(2).**

48. The prerequisites to maintaining a class action for injunctive and equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) exist as Amtrak has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive and equitable relief with respect to the class as a whole.

49. Amtrak's actions are generally applicable to the class as a whole, and Plaintiff seeks, among other things, equitable remedies with respect to the class as a whole.

**B. The proposed class satisfies the prerequisites of Rules 23(a) and (b).**

**1.** *Numerosity***:**

50. The individual class members are so numerous that joinder of all members in a single action is impracticable. Amtrak operates hundreds of trains a day and, upon information and belief, has sold thousands of Allianz travel-insurance policies.

51. While Plaintiff estimates the proposed class numbers are in the thousands, the exact number of class members—as well as the class members' names and addresses—can be identified from Amtrak's business records.

**2.** *Commonality and Predominance***:**

52. Common questions of law and fact exist as to Plaintiff's and the class members' claims. These common questions include:

a) whether Amtrak engaged in a deceptive and unfair business practice by omitting its receipt or retention of a kickback;

b) whether the representations made about insurance premiums collected by Amtrak would lead a reasonable customer to believe it was a pass-through charge;

c) whether Amtrak's omissions or misstatements relating to travel insurance would have been considered material by a reasonable consumer;

d) whether Amtrak's omissions of misstatements regarding travel insurance resulted in the class being damaged;

e) whether Amtrak receives undisclosed kickbacks, commissions, or fees from the sale of travel insurance;

f) whether Amtrak deprived consumers of their right to truthful information; and,

g) whether Amtrak unlawfully enriched itself at the expense of the class.

53. These common questions predominate over any questions solely affecting individual class members.

**3.** *Typicality***:**

54. Plaintiff's claims are typical of the putative class members' claims because of the similarity, uniformity, and common purpose of Amtrak's allegedly unlawful conduct. Like all class members, Plaintiff was damaged by paying money that Amtrak deceptively presented as a pass-through charge to an insurance company, when in fact Amtrak enriched itself in this process.

55. Each class member has sustained, and will continue to sustain, damages in the same manner as Plaintiff as a result of Amtrak's wrongful and deceptive conduct.

**4. *Adequacy*:**

56. Plaintiff will fairly and adequately protect and represent the interest of each class member because he has suffered the same wrongs as the class members.

57. Plaintiff is fully cognizant of her responsibilities as class representative and has retained class counsel experienced in complex class-action litigation, including litigation related to unfair and deceptive trade practices, and who have the financial and legal resources to meet the costs of—and understand the legal issues associated with—this type of litigation.

**5. *Superiority*:**

58. Class-action treatment is superior to the alternatives, if any, for the fair and efficient adjudication of the controversy alleged herein because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would entail. The likelihood that individual members of the class will prosecute separate actions, and their interest in so doing, is small due to the extensive time and considerable expense necessary to conduct such litigation. This action will be prosecuted in a fashion to ensure the Court's able management of this case as a class action on behalf of the class. Plaintiff knows of no difficulty likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**C. Rule 23(c)(4):**

59. In the alternative, the common questions of fact and law are appropriate for issue certification on behalf of the proposed Classes.

## V. COUNTS

### COUNT I
### *Violations of the District of Columbia Consumer Protection Procedures Act*
### **(D.C. Code Ann. § 28-3901 *et seq.* (West))**

60. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated therein.

61. Plaintiff brings this claim individually and on behalf of the proposed Class.

62. This cause of action is brought pursuant to District of Columbia Consumer Protection Procedures Act ("CPPA"). D.C. Code Ann. § 28-3901 *et seq.* (West).

63. The CPPA prohibits unfair, deceptive, and unlawful trade practices. The prohibited trade practices include, in part, the misrepresentation of a material fact that has a tendency to mislead; failure to state a material fact if such failure tends to mislead; use of innuendo or ambiguity as to a material fact, which has a tendency to mislead; and misrepresentation of a material fact which is otherwise misleading. D.C. Code Ann. § 28-3904 (e), (f), (f−1).

64. Amtrak is a "merchant" under the CPPA. As detailed above, Defendant partnered with a single insurer—Allianz—and then actively promoted that insurer's products on its website in exchange for a commission.

65. Plaintiff is a "consumer" under the CPPA—she purchased travel insurance for his own use (i.e., not for resale).

66. Amtrak's conduct in connection with the solicitation and collection of an undisclosed travel-insurance commission is a "trade practice" involving "goods or services." D.C. Code § 28-3901 (a)(2), (3), (6), (7).

67. The fact that Amtrak was illegally retaining or receiving illegal insurance commissions, and that consumers were funding this illegal commission, is a material fact that reasonable consumers like Plaintiff would factor into their decision to purchase (or not to purchase) travel insurance through Defendant's website.

68. Defendant's unfair and deceptive practices are likely to mislead—and have in fact misled—reasonable consumers, such as Plaintiff. Amtrak misrepresented material facts, failed to state material facts, and used innuendo or ambiguity as to material facts. For example, as described in detail above, Amtrak (a) failed to disclose its receipt of illegal kickbacks from Allianz; and (b) affirmatively indicated on its website that consumer travel-insurance payments would be passed directly through to Allianz in their entirety (e.g., by noting on its ticket receipts that Allianz would bill consumers separately).

69. Amtrak's allegedly deceptive conduct proximately resulted in Plaintiff's economic injury. Plaintiff and the Class Members have been actually aggrieved by Amtrak's unfair and deceptive practices in that they purchased the misrepresented product Amtrak was selling in the course of trade or commerce and were harmed financially because they: (a) would have sought out and paid less for their travel insurance coverage and/or (b) paid Amtrak a commission that Amtrak is not legally entitled to as it is not a licensed insurance agent or broker. Plaintiff and the Class Members would not have paid that undisclosed commission had they been aware that it would be illegally retained by Amtrak.

70. Reasonable consumers, including Plaintiff, would rely on Amtrak—one of the oldest and most well-established rail-service companies in the country—to host an accurate website and to otherwise obey state insurance laws.

71. Defendant's acts and omissions are unfair in that they (1) offend public policy; (2) are immoral, unethical, oppressive, and unscrupulous; and (3) cause substantial injury to consumers.

72. Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit; and are injuries of a nature that they could not have been reasonably avoided by consumers.

73. Moreover, D.C. Code § 28-3901(c) establishes an enforceable right to truthful information from merchants about goods and services. As a result of Amtrak's unfair and deceptive trade practices detailed herein, Defendant deprived Plaintiff and members of the proposed class of truthful information regarding its services and products.

74. Plaintiff and the class seek injunctive relief (e.g., enjoining Defendant from continuing to make any deceptive omissions or statements regarding travel insurance), as well as restitution, disgorgement, actual and/or statutory damages.

## COUNT II
### *Conversion*

75. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated therein.

76. Plaintiff brings this claim for conversion on behalf of herself and the proposed Class.

77. Plaintiff and Class members have an ownership right to the amounts of their payments illegally diverted to Amtrak as a kickback/commission.

78. Defendant has wrongly asserted dominion over the portions of the payments made by Plaintiff and Class Members paid for trip insurance and illegally diverted to Amtrak as a

kickback/commission. Defendant has done so with every trip-insurance policy purchased through its website.

79. As a direct and proximate cause of Defendant's conversion, Plaintiff and the Class Members suffered damages in the amount of the payments illegally diverted to Amtrak as a commission.

## COUNT III
### *Unjust Enrichment*

80. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

81. Plaintiff brings this claim for unjust enrichment on behalf of herself and the proposed Class.

82. Plaintiff and each class member conferred a benefit on Amtrak by funding Amtrak's illegal kickback, which allowed Amtrak to enrich itself to the detriment of Plaintiff and the class members.

83. Defendant voluntarily accepted and retained this benefit.

84. Because this benefit was collected without proper disclosure and amounted to a commission in violation D.C. Code Ann. § 31-1131.03 (West); and D.C. Code Ann. § 31-1131.13 (West), it would be inequitable for the Defendant to retain it without paying the value thereof to Plaintiff and the proposed class.

## COUNT IV
### *Fraudulent Concealment*

85. Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully stated herein.

86. Plaintiff brings this claim for fraudulent concealment on behalf of herself and the proposed Class.

87. Defendant's website omitted material facts and made material misstatements regarding Defendant's receipt of illegal insurance-brokerage commissions.

88. Amtrak knew or should have known that this material fact should not have been disclosed or concealed.

89. In concealing this material fact, Amtrak acted in bad faith.

90. Amtrak knew that by concealing or failing to disclose this material fact, Plaintiff and the Class would be induced to purchase an Allianz travel-insurance plan, or to pay more for that plan than Plaintiff otherwise would have.

91. Plaintiff and the proposed class suffered damages as a result of Defendant's concealment or failure to disclose the fact that it was receiving or retaining an illegal insurance-brokerage fee.

92. Amtrak had a duty to speak given that they were parties to transactions with Plaintiff and the proposed class; they had a duty to say enough to prevent their words from misleading Plaintiff and the proposed class; and they had special knowledge of the materials facts that Plaintiff and the proposed class did not possess.

## VI. PRAYER FOR RELIEF

93. Named Plaintiff and the plaintiff class request the following relief:

   a) certification of the class;

   b) a jury trial and judgment against Amtrak;

   c) injunctive relief, including an order enjoining Amtrak from further engaging in the misconduct alleged herein;

d) the costs of suit, including reasonable attorneys' fees, in accordance with the CPPA;

e) general, actual, statutory, compensatory and exemplary damages in an amount to be determined at trial;

f) restitution of the amount Amtrak was unjustly enriched as a result of the wrongs alleged herein, in an amount to be determined at trial;

g) prejudgment and postjudgment interest at the maximum rate permitted by applicable law; and

h) such other relief as the Court deems just and proper.

### VII. DEMAND FOR JURY TRIAL:

94. Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: October 29, 2019

Respectfully submitted,

/s/ Jason S. Rathod
Jason S. Rathod (D.C. Bar No. 100082)*
Nicholas A. Migliaccio (D.C. Bar No. 484366)*
**MIGLIACCIO & RATHOD LLP**
412 H St. NE, Suite 302
Washington D.C. 20002
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
jrathod@classlawdc.com
nmigliaccio@classlawdc.com

Kevin Landau
Brett Cebulash
Miles Greaves
**TAUS, CEBULASH & LANDAU, LLP**
80 Maiden Lane, Suite 1204
New York, NY 10038
Telephone: (646) 873-7654
Facsimile: (212) 931-0703
bcebulash@tcllaw.com
klandau@tcllaw.com
mgreaves@tcllaw.com

Marc L. Godino

                **GLANCY PRONGAY & MURRAY LLP**
                1925 Century Park East, Suite 2100
                Los Angeles, CA 90067
                Telephone: (310) 201-9150
                Facsimile: (310) 201-9160
                Email: mgodino@glancylaw.com

Rosemary M. Rivas
**LEVI & KORSINSKY, LLP**
388 Market Street, Suite 1300
San Francisco, CA 94111
Phone: (415) 373-1671
Fax: (415) 484-1294.
rrivas@zlk.com

Daniel C. Hedlund
David A. Goodwin
Mickey L. Stevens
**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mstevens@gustafsongluek.com

*Attorneys for Plaintiff*