## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LISA SALMONS, on behalf of herself and all others similarly situated,<br><br><br><br>                        Plaintiff,<br><br>        v.<br><br>NATIONAL RAILROAD PASSENGER CORP., d/b/a AMTRAK,<br><br>                       Defendant. | Civil No. 1:19cv3253 CKK<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT** |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   RELEVANT FACTUAL AND PROCEDURAL BACKGROUND.................................. 3

III.  LEGAL STANDARD.......................................................................................... 5

IV.   ARGUMENT.................................................................................................... 6

   A.   Plaintiff's Claims Are Not Preempted by the Rail Passenger Service Act of 1970 ........... 6

     1.   Plaintiff's Claims Do Not Purport to Regulate Amtrak's Services ........................... 6

     2.   Plaintiff's Claims Do Not Regulate Amtrak's Rates................................... 9

   B.   Plaintiff Has Standing to Maintain Claims Against Amtrak ........................... 10

     1.   Plaintiff Has Sufficiently Pleaded Injury-In-Fact.................................... 10

     2.   Plaintiff Has Alleged an Injury That Is Traceable to Defendant's Conduct ............. 13

   C.   Plaintiff has Adequately Alleged Defendant's Violation of the CPPA ........................ 14

     1.   The CPPA Applies to Instant Transactions .................................... 14

     2.   Defendant fails to allege a "true conflict", and a conflict of law analysis favors D.C. law were a "true conflict" to exist ............................................ 16

     3.   Defendant is a merchant under the CPPA .................................... 20

     4.   Plaintiff alleges a material misrepresentation and a material omission under CPPA  22

     5.   Plaintiff has sufficiently alleged an injury.................................... 28

   D.   Plaintiff Has Properly Stated A Claim for Conversion ........................... 30

   E.   Plaintiff States a Claim for Unjust Enrichment .................................... 32

   F.   Plaintiff has Adequately Alleged Fraudulent Concealment.............................. 34

V.    CONCLUSION ................................................................................................ 35

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Washington Gas Light Co*., 481 F. Supp. 2d 16 (D.D.C. 2006), aff'd, No. 06-7040,

2006 WL 3798858 (D.C. Cir. Aug. 24, 2006) ............................................................ 34

*Alford v. Providence Hosp.,* 945 F. Supp. 2d 98 (D.D.C. 2013), aff'd, 561 F. App'x 13 (D.C. Cir.

2014).......................................................................................................................... 34

*American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995)............................................................ 8

*Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43 (D.D.C. 2017) .................................................. 15

*Attias v. Carefirst, Inc.*, 865 F.3d 620, 622 (D.C. Cir. 2017) .................................................. 11, 13

*Austin-Spearman v. AARP*, 119 F. Supp. 3d 1 (D.D.C. 2015).................................. 11, 12, 13, 29

*Banga v. Gundumolgula*, 2013 U.S. Dist. LEXIS 101705 (E.D. Cal. July 19, 2013) ................... 8

*Baylor v. Mitchell Rubenstein & Assocs.,* 857 F.3d 939 (D.D.C. 2017)......................................... 20

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 5

*Browning v. Clinton*, 292 F.3d 235 (D.C. Cir. 2002) ............................................................ 5, 27

*Bucheit v. Palestine Liberation Org.*, 388 F.3d 346 (D.C. Cir. 2004)......................................... 30

*Calvatti v. Antcliff*, 346 F. Supp. 2d 92 (D.D.C. 2004) .................................................. 22

*Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236 (D.D.C. 2015) ........................ 24, 30

*Cannon v. Wells Fargo Bank, N.A*., 926 F. Supp. 2d 152 (D.D.C. 2013) .................................... 34

*City of Boston Delegation v. FERC*, 897 F.3d 241 (D.C. Cir. 2018)............................................ 10

*Concordia Pharms., Inc. v. Method Pharms., LLC*, 2016 U.S. Dist. LEXIS 41904 (W.D. Va.,

Mar. 29, 2016)......................................................................................................... 27

*Conley v. Gibson*, 355 U.S. 41 (1957) .......................................................................... 5

*Cruz v. Am. Airlines, Inc*., 1997 WL 33441909 (D.D.C. Oct. 24, 1997)........................................ 8

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013).......................................................... 16

*Dolan v. Jetblue Airways Corp.*, 385 F. Supp. 3d 1338 (S.D. Fla. 2019)............................. 6, 8, 33

*Donoff v. Delta Air Lines, Inc.*, No.18-cv-81258-DMM, 2019 U.S. Dist. LEXIS 114549 (S.D.

    Fla. July 9, 2019)............................................................................................................. 6, 33

*Duggan v. Keto*, 554 A.2d 1126 (D.C. 1989) ............................................................................. 30

*Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21 (D.D.C. 2014) ............................... 31

*Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799 (D.C. 1999)............................................ 34

*Flores v. United Airlines*, 2019 U.S. Dist. LEXIS 212130 (N.D. Ill. Dec. 10, 2019) ........... 10, 24

*Floyd v. Bank of Am. Corp.*, 70 A.3d 246 (D.C. 2013) ................................................................ 25

*Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905 (D.C. Cir. 2015)............................................ 5

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055 (D.C. 2008)............ 24

*Gordon v. Dist. Unemployment Cop. Bd.*, 402 A.2d 1251 (D.C. 1979) ...................................... 25

*Grayson v. AT&T Corp.*, 15 A.3d 219 (D.C. 2011)........................................................ 12, 28, 29

*Hall v. South River Restoration, Inc.*, 270 F. Supp. 3d 117 (D.D.C. 2017)....................... 20, 21, 22

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).............................................................. 29

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15 (D.D.C. 2003)...... 34

*Howard v. Riggs Nat. Bank*, 432 A.2d 701 (D.C. 1981) ............................................................. 21

*In re Am. Airlines Privacy Litig.*, 370 F. Supp. 2d 552 (N.D. Tex.)............................................... 8

*In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y 2005)........................ 8

*Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157 (D.D.C. 2016) .................................... 35

*Johnson v. McCool*, 808 F. Supp. 2d 304 (D.D.C. 2011)............................................................ 31

*Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934 (D.D.C. 1984) ........................................... 18

*Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1 (D.D.C. 2019)..................................................... passim

*Levine v. Am. Psychological Ass'n*, 766 F.3d 39 (D.C. Cir. 2014) .................................................. 15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................ 13

*Logan v. Providence Hosp. Inc.*, 778 A.2d 275 (D.C. 2001 ......................................................... 18

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ......................................................................... 10

*Mann v. Bahi*, 251 F. Supp. 3d 112 (D.D.C. 2017) .................................................... 12, 25, 27, 29

*McNamara v. Picken*, 950 F. Supp. 2d 193 (D.D.C. 2013) .......................................................... 31

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ......................................................... 7

*Nat'l Fed'n. of the Blind v. United Airlines, Inc.*, 813 F.3d 718 (9th Cir. 2016) ........................... 7

*News World Commc'ns, Inc. v.  Thompsen*, 878 A.2d 1218 (D.C. 2005) .................................... 32

*Novartis Corp. v. FTC*, 223 F.3d 783 (D.C. 2000) ....................................................................... 27

*Orangeburg v. FERC*, 862 F.3d 1071 (D.C. Cir. 2017) ............................................................... 13

*Oveissi v. Islamic Republic of Iran*, 573 F.3d 835 (D.C. Cir. 2009) ....................................... 17, 18

*Papageorge v. Zucker*, 169 A.3d 861 (D.C. 2017) ...................................................................... 31

*People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884 (2016) ............................... 8

*People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.*, 59 F.

   Supp. 3d 91 (D.D.C. 2014) ........................................................................................................ 5

*People v. Telehublink Corp.*, 301 A.D.2d 1006 (3d Dep't 2003) ................................................ 16

*Renchard v. Prince William Marine Sales, Inc.*, 87 F. Supp. 3d 271 (D.D.C. 2015) ............... 14, 15

*Rothberg v. Xerox Corp.*, 2016 WL 10953882 (D.D.C. Feb. 3, 2016), *aff'd*, 709 F. App'x 1 (D.C.

   Cir. 2017) ................................................................................................................................ 32

*Saucier v. Countrywide Home Loans*, 64 A.3d 428 (D.C. 2013) .................................... 23, 25, 26

*Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039 (D.C. Cir. 2010) ................................................. 15, 17

*Sheraton Operating Corp. v. Just Corp. Travel*, 984 F. Supp. 22 (D.D.C. 1997) ....................... 35

*Smith v. Hi-Tech*, No. 2016-CAB-006862 (D.C. Super Ct.) (May 26, 2017)................................. 30

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) ........................................................... 13

*United States v. Windsor*, 570 U.S. 744 (2013) ..................................................... 11, 28

*USA Waste of Md., Inc. v. Love*, 954 A.2d 1027 (D.C. 2008) ........................................ 17

*Warth v. Seldin*, 422 U.S. 490 (1975) .......................................................................... 12

*Washkoviak v. Student Loan Mktg. Ass'n*, 900 A.2d 168 (D.C. 2006)...................... 15, 18

*Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003)...................... 12, 29

*Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289 (S.D. Fla. 2017) .................... 32, 33

*Zuckman v. Monster Bev. Corp.*, 2016 D.C. Super. LEXIS (D.C. Super. Ct. Aug. 12, 2016)........ 29

**Statutes**

49 U.S.C. § 24301(g) ................................................................................................. 7

D.C. Code § 28-3901 ......................................................................................... passim

D.C. Code § 28-3904......................................................................... 14, 22, 24, 27

D.C. Code § 31-1131 ............................................................................................... 27

D.C. Code § 31-2502 ............................................................................................... 27

Fed. R. Civ. P. 12(b)(6)........................................................................................... 31

Fed. R. Civ. P. 56.................................................................................................... 31

**Other Authorities**

65 D.C. Reg. 5970................................................................................................... 28

*Martin v. Coca-Cola Co.*, 785 F. Supp. 3 (D.D.C. 1992) ......................................... 23

Report on Bill 220185............................................................................................. 28

Restatement (Second) of Conflict of Laws § 145 .................................................. 18

Restatement (Second) of Conflict of Laws § 145 (1971) ....................................... 18

# I.     INTRODUCTION

This class action is based on Defendant National Railroad Corporation's ("Defendant" or "Amtrak") undisclosed receipt of an illegal kickback on each sale of travel insurance that it solicits from online purchasers of rail travel. Compl. ¶ 27. Specifically, Defendant partners with a single insurer, Allianz Global Assistance ("Allianz") and then actively promotes trip insurance by requiring every online purchaser to make an election regarding trip insurance prior to permitting a purchase of an Amtrak ticket. Through this required insurance election, Amtrak reaps an illegal commission unknowingly paid for by purchasers of trip insurance, since purchasers have to pay not only the cost of trip insurance, but also the illegal commission paid to Amtrak by Allianz. Nowhere in Defendant's communications to its online customers did Defendant disclose its receipt of insurance kickbacks from Allianz or that such illegal commissions were tacked onto the cost of the Allianz insurance. *Id* 17. Had Defendant disclosed and not engaged in its illegal scheme, Plaintiff either would not have purchased travel insurance and/or would have been able to pay less for travel insurance. *Id* at 32.

Plaintiff's well-plead complaint alleges that Defendant's kickback scheme violates the D.C. Consumer Protection Procedure Act (the "CPPA"), as well as the common law (namely profiting itself at the expense of the class through conversion, unjust enrichment, and fraudulent concealment). Defendant does not dispute that it receives these commissions, nor that an insurance agent or broker must be licensed in order to lawfully receive a commission for insurance solicitation. Nonetheless, Defendant argues for dismissal of each and every one of Plaintiff's claims on other technical, but non-meritorious grounds, requiring denial of its motion.

First, Defendant argues that the claims here are preempted by the Rail Passenger Service Act of 1970 ("Amtrak Act"). An analogous argument has been raised by airlines in similar suits challenging their travel insurance sales practices and has been consistently rejected. The Court should do the same here, since Defendant's insurance kickback scheme relates to neither Defendant's own rates or its own services for purposes of federal preemption.

1

Next, Defendant incorrectly argues that Plaintiff lacks standing to bring her claims. Plaintiff sufficiently alleges injury in fact through allegations of (1) financial harm, and (2) Defendant's violation of Plaintiff's enforceable right to truthful information under the CPPA. Further, Defendant need not be the sole immediate nor proximate cause of Plaintiff's injury for Plaintiff to properly allege an injury that is fairly traceable to Defendant. Here, Plaintiff's injury is fairly traceable to Defendant by virtue of requiring consumers to pay more for trip insurance through inclusion of an illegal kickback on each sale as plead.

Defendant's various arguments regarding Plaintiff's CPPA claim are all baseless. Contrary to Defendant's assertion, the CPPA reaches the claims of Plaintiff, a nonresident, because she alleges a misrepresentation scheme emanating from the District of Columbia. Further, a choice of law analysis, if applicable, requires application of D.C. law. Though Defendant speciously argues it is not a merchant, its actions give rise to a consumer-merchant relationship with regard to trip insurance by soliciting the insurance, administering part of the insurance transaction, inserting itself into the insurance purchasing process by requiring an election, and by receiving kickbacks for sales resulting from its actions. Regarding the allegations themselves, Plaintiff alleges both material misstatements and omissions, though Defendant inaccurately argues Plaintiff alleges neither. Defendant's statement that the cost of travel insurance is "Not charged by Amtrak" materially mislead customers into thinking that Defendant had no financial interest in the transaction. Compl. ¶¶ 25-26. Defendant's omissions included its failure to disclose its financial interest in the transaction, which misled customers into funding Defendant's illegal commissions. *Id* at 13. Likewise, Plaintiff alleges an actual injury for these same reasons establishing Plaintiff's injury in fact for Article III standing.

Finally, Plaintiff's common law claims are all sufficiently stated. Defendant's dominion and control of the illegal commissions sufficiently establishes a claim for conversion of funds to which Plaintiff and the class has an identifiable right. Plaintiff also adequately pleads all three elements of her unjust enrichment claim by sufficiently stating a benefit, a detriment, and an inequity from Plaintiff's overpayment due to Defendant's illegal kickback scheme. Lastly,

2

Defendant's bad faith, materially misleading statements and omissions, its knowledge that such conduct was misleading, and its knowledge that Plaintiff would be induced to purchase insurance by virtue of Defendant's conduct, all sufficiently establish a claim for fraudulent concealment.

Because all of Defendant's arguments are unavailing as to Plaintiff's well-plead allegations, Defendant's motion should be denied in its entirety.

## II.    RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Defendant provides rail service nationwide and is headquartered in Washington D.C. . Compl., ¶¶ 7, 14.  Amtrak sells many of its tickets through its website, www.Amtrak.com.  *Id*., ¶ 14.  When a customer visits Amtrak's website to buy a ticket, a customer is not able to complete their purchase until they must make an election on travel insurance.  *Id*., ¶¶ 17-24.  Specifically, prior to being permitted to purchase a rail ticket, consumers must choose one of two options: "Yes! Protect my trip just $[X]" or "No, I choose not to protect by trip to [city]."  *Id*., ¶ 21.  The bottom of this webpage explains that the policy being marketed and sold is offered by Allianz Global Assistance and underwritten by Jefferson Insurance Company or BCS Insurance Company ("Allianz").  *Id*., ¶ 24.

After a customer chooses to purchase travel insurance (and then completes the purchase of the rail ticket) Amtrak sends the customer a receipt that states:

> Amtrak will only charge your credit card the amount for rail fare, accommodations, and ticket delivery.  Your other travel options will be charged by our travel partner(s), and you will receive separate confirmation emails detailing those charges.
>
> **Travel Insurance** Your travel insurance request has been forwarded to our partner Allianz Global Assistance.  You will receive an email from them confirming the details of your insurance purchase.

*Id*., ¶ 25.  Amtrak then notes that the cost of travel insurance is "***Not Charged by Amtrak.***"  *Id*. (emphasis supplied).

In addition to receiving a receipt for the customer's purchase of train ticket(s), Allianz sends the customer an e-mail with a copy of the insurance policy. Nowhere in the e-mail or insurance policy does Allianz disclose that Amtrak is receiving any money in connection with the customer's purchase of the insurance. *Id*., ¶ 27.

But, in reality, Amtrak receives a portion of the money customers pay for travel insurance; *i.e.* Amtrak is being paid an illegal insurance commission on top of the cost of the insurance. *Id*., ¶ 12. Amtrak is not a licensed insurance broker in Washington D.C. or any other jurisdiction. *Id*., ¶ 10.

On April 23, 2018, Plaintiff visited Amtrak's website and going through the process described above, purchased a travel-insurance policy to cover a trip her son was going to take. *Id*., ¶¶ 32-36. Afterwards, Plaintiff, like other customers, received an e-mail from Allianz attaching the insurance policy. Neither the email nor the insurance policy mentioned that Amtrak was receiving a portion of the money she paid to Allianz. *Id*., ¶¶ 35-36. Had Plaintiff been aware that a portion of her travel insurance was being used to fund an illegal kickback to Amtrak she would not have purchased the travel insurance and/or would have paid less for travel insurance. *Id*., ¶ 9.

On October 29, 2019, Plaintiff filed the class-action complaint on behalf of: "All persons who purchased an Allianz travel-insurance policy on Amtrak's website. Excluded from the class are Amtrak, its affiliates, subsidiaries, agents, board members, directors, officers, and employees." *Id*., ¶ 44. Plaintiff brings claims for (1) violation of District of Columbia Consumer Protection Procedures Act; (2) Conversion; (3) Unjust enrichment; and (4) Fraudulent Concealment. *Id*., ¶¶ 60-92.

## III.    LEGAL STANDARD

Defendant has moved to dismiss Plaintiff's claims pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  When assessing Plaintiff's pleading under either rule, the Court must "accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *People for the Ethical Treatment of Animals, Inc. v. United States Fish & Wildlife Serv.*, 59 F. Supp. 3d 91, 95 (D.D.C. 2014); *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To establish standing Plaintiff "must state a plausible claim that [she has] suffered an injury in fact fairly traceable to the actions of the defendant that is likely to be redressed by a favorable decision on the merits." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015).

In contrast, to overcome a Rule 12(b)(6) motion Plaintiff's Complaint need only state a claim to relief that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[D]ismissal is inappropriate unless the 'plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Browning*, 292 F.3d at 242 (citing *Conley v. Gibson*, 355 U.S. 41, 44–45 (1957)).  At this stage, courts "do not assess 'the truth of what is asserted or determin[e] whether a plaintiff has any evidence to back up what is in the complaint.'"  *Browning*, 292 F.3d at 242 (citation omitted).  Rather, Rule 8 simply requires the pleader to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]"  *Bell Atl. Corp.*, 550 U.S. at 555.

## IV.    ARGUMENT

## A.    Plaintiff's Claims Are Not Preempted by the Rail Passenger Service Act of 1970

### 1.    Plaintiff's Claims Do Not Purport to Regulate Amtrak's Services

First, Amtrak argues that Plaintiff's claims regulate Amtrak's services.  *See* MTD at 7. Specifically, Amtrak argues that Plaintiff's claims have a connection with Amtrak's ticketing service and the decision to give its customers a choice to purchase travel insurance "relates to" Amtrak's "service."  *See* MTD at 8-9.  These arguments are wrong and, tellingly, have been squarely rejected by other federal courts regarding the sale of trip insurance on airline websites.

For example, in *Dolan v. Jetblue Airways Corp.*, 385 F. Supp. 3d 1338, 1345-1346 (S.D. Fla. 2019), the plaintiff alleged that JetBlue, in coordination with various third-party insurance entities, retains illegal kickbacks of insurance commissions as an unlicensed insurance broker from the sale of trip insurance on its website. *Id.* at 1343. JetBlue argued that the plaintiff's state-law claims were preempted under the Airline Deregulation Act of 1978 (ADA), 49 U.S.C. § 41713, an act with preemptive provisions highly analogous to those of the Amtrak Act. *Id.* at 1344. The court rejected this argument finding that "there is certainly nothing about purchasing trip insurance, even as part of the booking process, that is particular to a service over which the airline industry competes: it may be a service that is offered by a particular airline, or even many airlines; but that does not necessarily make it an *air-carrier service* under the ADA." *Id.* Similarly, in *Donoff v. Delta Air Lines, Inc*., No.18-cv-81258-DMM, 2019 U.S. Dist. LEXIS 114549, *10 (S.D. Fla. July 9, 2019), the court held: "I do not find the marketing of flight insurance to be 'related to the price, route, or service of an air carrier' such that Plaintiffs' claims are preempted under § 41713 of the ADA." *Id.*  Other federal district courts have also found that

6

the option to purchase travel insurance on an airline's website from a third party is *not* a service of an air carrier, nor does it have "a connection with or reference to airline rates, routes, or services." *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992). No federal district courts have found otherwise.

In *Nat'l Fed'n. of the Blind v. United Airlines, Inc.*, 813 F.3d 718 (9th Cir. 2016), the Ninth Circuit addressed the contour of "services" and preemption. There, a class action was brought against United Airlines, alleging that the policy of using kiosks inaccessible to blind travelers violated California's antidiscrimination laws. *Id.* at 722. The district court found that the claims were expressly preempted by the ADA. *Id.* The Ninth Circuit, affirming on different grounds, disagreed with United that "its kiosks are a 'service' as that term is used in the ADA." *Id.* at 726. In reaching its conclusion, the Ninth Circuit first noted that the term "services" is not broadly defined "to reach the various amenities provided by airlines" *Id.* The court further noted that "to the extent they regulate kiosks, California's antidiscrimination statutes regulate an amenity that United has chosen to provide," rather than being "connected to 'services,' *i.e., access to flights* . . ." *Id.* at 726-28 (emphasis added).

The same is true here. The option to purchase travel insurance is *not* a service "in connection with rail passenger transportation." 49 U.S.C. § 24301(g). If anything, it is merely a convenience or an amenity offered to customers to allow them to purchase third party travel insurance directly through Amtrak's website (and of course to allow Amtrak to receive an illicit, undisclosed commission).  And Amtrak, by forcing online consumers to make an election on travel insurance as a prerequisite to purchase rail tickets, does not convert an ancillary amenity that Amtrak has chosen to provide into a service relating to the "price, route or service" of a rail carrier.

Amtrak's reliance on *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) is unavailing and instead serves to punctuate Plaintiff's point. *Wolens* involved the application of the ADA to a state law claim challenging an airline's frequent flyer program and retroactive changes in terms and conditions of the program, a claim clearly related to the price, route and service provided by an air carrier. *See id.* at 222. While Amtrak also argues that the sale of travel insurance policies is connected to Defendant's services through its interaction with Defendant's website booking path, *see* MTD at 8, Defendant conflates the purchase of a separate, third-party's travel insurance with services directly related to Amtrak's reservations or ticket sales. *Compare, e.g., Jetblue*, 385 F. Supp. 3d at 1345 (rejecting defendant's preemption argument under the ADA and finding that the offering of trip insurance, as part of the online ticket-purchasing process, is not part of the customer's experience of air travel), *with In re Jetblue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 315 (E.D.N.Y 2005) (preempting state-law claim complaining of unfair and deceptive acts regarding the way the airline handled personal information obtained during the reservation and booking of air travel) and *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884, 901 (2016) (claims that Delta's frequent flyer app and privacy policy must comply with state law was preempted by the ADA).[1]  Accordingly,

---

[1] The other cases on which Amtrak relies are distinguishable and distinctively tied to airlines' service.  *See, e.g., In re Am. Airlines Privacy Litig.*, 370 F. Supp. 2d 552 (N.D. Tex.) (preempting state law claims relating the disclosure of highly confidential passenger information which American Airlines collects during its ticketing process); *Cruz v. Am. Airlines, Inc.*, 1997 WL 33441909, at *12 (D.D.C. Oct. 24, 1997) (preempting claims arising out of lost baggage because the claims "arise directly out of the bargained for services of providing transportation of luggage."); *Banga v. Gundumolgula*, 2013 U.S. Dist. LEXIS 101705, *7 (E.D. Cal. July 19, 2013) (preempting claims relating to defendant Emirates Airlines' refund policy finding that fee-waivers are part of the reservations and ticketing process); *Flaster/Greenberg P.C. v. Brendan Airways, LLC*, 2009 U.S. Dist. LEXIS 48653, *16 (D.N.J. June 10, 2009) (preempting claims under the New Jersey consumer fraud act arising out of defendant Brendan Airways cancellation of a contract for travel arrangements).

presenting the option to purchase third-party travel insurance on Amtrak's website is simply providing an ancillary amenity that is optional and is not related to Amtrak's "services." And simply by forcing consumers to make a decision on trip insurance by withholding purchase of those services until a consumer makes that election does not convert something that is ancillary and unrelated to Amtrak's rail services into something that is central and related to those services.

## 2. Plaintiff's Claims Do Not Regulate Amtrak's Rates

Defendant next argues that Plaintiff's claims are preempted because they purport to regulate Amtrak's rates. *See* MTD at 10-11. Defendant's argument is fundamentally flawed. The issue here is unrelated to the price that Amtrak charges for its rail service but instead involves Amtrak's inflating the cost of trip insurance by having consumers fund its illicit commission. *See* Compl. ¶ 25 ("Amtrak will only charge your credit card the amount for rail fare, accommodations and ticket delivery. Your other travel options will be charged by our travel partner(s), and you will receive separate confirmation emails detailing those charges."). Because the money at issue here relates to Amtrak's receipt of illegal commissions from a third party service, Amtrak contorts itself to argue that Plaintiff's claims purport to regulate Amtrak's rates since the *travel insurance* covers "any added costs or lost payment than an individual might incur while on a trip or planning for a trip." *See* MTD at 11. The fact remains that even if the insurance would provide some coverage to consumers, that coverage has no effect on the price Amtrak charges for rail service– instead the insurance would at best reimburse consumers for the price of that rail service in certain limited circumstances – which is separate from Amtrak and has no impact on Amtrak's own rates (Amtrak collects the travel fare regardless of trip insurance). The purpose of the travel insurance is that in the event of a covered loss, the third-

party travel insurer refunds to the traveler the ticket price or change fee. The rates Amtrak charges for rail service are unaffected, and thus, are not related to Amtrak's rates.

In *Flores v. United Airlines*, 2019 U.S. Dist. LEXIS 212130 (N.D. Ill. Dec. 10, 2019), United Airlines made an identical argument, which the court rejected. There, the plaintiff brought claims against United Airlines relating to the sale of trip insurance on its website. *Id.* at *1-4. United argued that plaintiff's claims related to airline rates in that the travel insurance covers change fees under certain circumstances. *Id.* at *18. The Court rejected the contention that claims regarding the sale of travel insurance on defendant's website related to the rates defendant charges for air travel. *Id.* Rather, the court held that "the purpose of the travel insurance seems to be that, in the event of a covered loss, the third-party travel insurer refunds to the traveler the ticket price or change fee" and that "[t]he rates United charges are unaffected, so plaintiff's claim does not relate to airline rates." *Id.* at *19. The same is true here that Amtrak's rates are unaffected. For the reasons set forth above, Amtrak's preemption argument is legally baseless and should be rejected.

## B.    Plaintiff Has Standing to Maintain Claims Against Amtrak

### 1.    Plaintiff Has Sufficiently Pleaded Injury-In-Fact

Defendant is correct that, in order to satisfy the "irreducible constitutional minimum" of standing, a plaintiff must have suffered (1) an injury in fact (2) that is traceable to the challenged conduct of the defendant  and (3) that is likely to be redressed by a favorable judicial decision.[2] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *see also City of Boston Delegation v. FERC*, 897 F.3d 241, 248 (D.C. Cir. 2018). An injury-in-fact may be shown by "an invasion of a legally

---

[2] Defendant does not challenge the third element of standing; consequently, Plaintiff will not address it here.

protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *United States v. Windsor*, 570 U.S. 744, 757 (2013) (internal quotations and citations omitted). Plaintiff has established such a concrete and particularized injury-in-fact.

First, financial or economic harm is a "canonical example" of an injury-in-fact adequate to establish standing. *Austin-Spearman v. AARP*, 119 F. Supp. 3d 1, 8 (D.D.C. 2015). Plaintiff's statement that she would have paid less or opted against purchasing travel insurance is not a conclusory statement. (Compl. at ¶ 32). As a result of the illicit kickback, Plaintiff alleges that she overpaid for trip insurance by having to fund Defendant's illegal and undisclosed commission on top of the actual cost of insurance. This constitutes a financial injury in fact (overpaying) that is directly related to Defendant's conduct (requiring an election without disclosing the illegal kickback and requiring payment of the illegal kickback). Plaintiff also alleges that Amtrak financially harmed her and class members by misleading them into paying this overcharge, including the illegal commission, and by violating Plaintiff's right to truthful information. (Compl. ¶¶ 32–37, 73). Thus, Plaintiff here has sufficiently established that she has suffered an injury-in-fact. (Compl. ¶¶ 32, 34, 37, 69). Plaintiff's factual allegations are supported by a detailed description of Amtrak's illegal conduct. (Compl. ¶¶ 10–36). At this stage of the proceedings, Plaintiff is not required to provide more evidence. *Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 36 (D.D.C. 2019) (finding personal jurisdiction sufficiently alleged when plaintiff was not told that her insurance payment included a royalty commission) (citing *Attias v. Carefirst, Inc.*, 865 F.3d 620, 622, 627–28 (D.C. Cir. 2017)).

Second, D.C. courts have held that, under Article III, "one manifestation of injury in fact is the violation of legal rights created by statute." *Grayson v. AT&T Corp.*, 15 A.3d 219, 234 (D.C.

2011); *see Warth v. Seldin*, 422 U.S. 490, 500 (1975) (noting that an injury required by Article III "may exist solely by virtue of 'statutes creating legal rights, the invasion of which creates standing'"). The CPPA establishes "an enforceable right to truthful information from merchants about consumer goods and services . . . ." D.C. Code § 28-3901(c). Plaintiff alleges that Amtrak violated the legal rights created by the CPPA. (Compl. ¶¶ 60–73). Thus, even if Plaintiff's injury derived only from a violation of her statutory legal right to truthful information, as created by the CPPA, she would sufficiently allege an injury-in-fact. *Grayson*, 15 A.3d at 248–49 ("[I]n terms of standing in this case, Mr. Grayson's injury is derived solely from a violation or invasion of his statutory legal rights created by the CPPA."); *see also Krukas* 376 F. Supp. at 36 (finding for plaintiff after noting that "[t]he plaintiff asserts that she has sufficiently alleged an injury in fact based on: (1) the financial harm she suffered when AARP misled her into paying an illegal 4.95% commission; and (2) *the violation of her statutory right to truthful information*") (emphasis added). Plaintiff adequately alleges an injury-in-fact because she pleads that, as a result of the deceptive trade practices of Defendant, Plaintiff and class members have been deprived of truthful information regarding their choice to purchase travel insurance.[3] (Compl. ¶ 73).

Defendant not only misconstrues the requirements for demonstrating injury-in-fact, but also misunderstands the bases for Plaintiff's injury. Plaintiff does not allege that she has not received "the benefit of the bargain." *See Austin*-Spearman,119 F. Supp. 3d at 12–13 (dismissing claim that defendant did not deliver on its stated privacy policy and therefore plaintiff paid more

---

[3] Defendant's reliance on *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003) is misplaced because in *Williams*, unlike here, the plaintiff did not plead direct financial loss from material omissions and misrepresentations and also because the plaintiff did not plead injury from the deprivation of truthful information. Subsequent decisions have established that this is sufficient to adequately allege injury. *See, e.g.*, *Mann v. Bahi*, 251 F. Supp. 3d 112, 119 (D.D.C. 2017) (holding allegations that plaintiff's agent was actually misled by misrepresentations and omissions and suffered harm as a result sufficient for Article III standing).

than the services were worth). To the contrary, Plaintiff alleges that she and the class overpaid because the price was inflated by having to pay the illegal commissions that Amtrak required on top of the cost of insurance and would not have paid but for Amtrak's misrepresentations and illegal commission. Amtrak's misrepresentations are not a matter of faulty performance, as in *Austin-Spearman*, but are instead a matter of undisclosed, unlawful, and deceptive practices, namely receipt of an undisclosed kickback paid by Plaintiff and other class members in violation of the CPPA. This satisfies the standing requirement for injury-in-fact.

2.    **Plaintiff Has Alleged an Injury That Is Traceable to Defendant's Conduct**

An injury must also be "fairly traceable to the challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). This element of standing "does not require that the defendant be the most immediate cause, or even a proximate cause, of the plaintiff's injuries; it requires only that those injuries be 'fairly traceable' to the defendant." *Attias*, 865 F.3d at 629 (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *Orangeburg v. FERC*, 862 F.3d 1071, 1080–84 (D.C. Cir. 2017)). Thus, the fact that Amtrak points to Allianz as another cause of Plaintiff's injury (by kicking back money to Amtrak) does not diminish the fact that Amtrak caused Plaintiff's injury by insisting on an election and by not disclosing that it was being paid illegal commissions. Indeed, by urging online consumers to buy travel insurance from Allianz without disclosing the kickback and requiring them to make an election on travel insurance prior to allowing them to purchase a ticket, Defendant directly injured class members by tacking on costs over and above the costs of trip insurance. (Compl. ¶ 12). Plaintiff's allegations of Defendant's involvement in the illegal commission scheme demonstrate that Plaintiff and the class members' injuries are fairly traceable to the Defendant.

13

## C.    Plaintiff has Adequately Alleged Defendant's Violation of the CPPA

### 1.    The CPPA Applies to Instant Transactions

The CPPA applies to the instant transactions because Defendant resides in, and its

misrepresentations and illegal kickback scheme all emanated from, the District of Columbia. The

CPPA states, in relevant part, that "[i]t shall be a violation of this chapter for any person to engage

in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or

damaged thereby…." D.C. Code § 28-3904. Both "person" and consumer" are defined in

exceptionally broad terms by the statute, and are not limited by geography. See D.C. Code § 28-

3901(a)(1)-(a)(2). The statute "shall be construed and applied liberally to promote its purpose."

D.C. Code § 28-3901(c). In *Krukas*, the court held that, regardless of connections to other states,

the CPPA applies when "the plaintiff alleges that the defendants' false advertising and unfair

business practices emanated from the District of Columbia, where they are based"). 376 F. Supp.

3d at 35 (citation omitted); *see also Renchard v. Prince William Marine Sales, Inc.*, 87 F. Supp. 3d

271, 282-83 (D.D.C. 2015) ("the plaintiff . . . avers that *the defendant's actions in the District of

Columbia* gave rise to the plaintiff's claims under the CPPA") (emphasis in original).

Plaintiff's well-plead allegations of a misrepresentation and illegal kickback scheme

emanating from the District of Columbia demonstrate the necessary ties to D.C. for the CPPA to

apply to Plaintiff's and the class' claims. According to the Complaint:

> Amtrak formulated, executed, and monitored its kickback scheme in D.C., where it
> approved and disseminated the marketing materials at issue, and where it received or
> retained its illegal insurance commissions, among other things. Its communications and
> other efforts to execute the scheme largely, if not exclusively, emanated from the District
> of Columbia.

(Compl. 30.) Further:

> For purposes of the scheme, the relationship between Amtrak and its customers, including
> Plaintiff, was centered in the District of Columbia since communications regarding travel

> insurance emanated from the District of Columbia; Plaintiff and class members sent
> payment to be received at Amtrak's headquarters in the District of Columbia; and Amtrak
> received its commission from Allianz in the District of Columbia.

(Compl. ¶ 31.) Precedent from this Court, the D.C. Circuit, and the D.C. Court of Appeals firmly

establishes that these allegations are enough for the CPPA to apply. *See, e.g., Krukas,* 376 F. Supp.

at 35; *Renchard*, 87 F. Supp. 3d at 282-83; *Levine v. Am. Psychological Ass'n (In re APA*

*Assessment Fee Litig.)*, 766 F.3d 39, 55 (D.C. Cir. 2014); *Washkoviak v. Student Loan Mktg. Ass'n*,

900 A.2d 168, 183 (D.C. 2006).

      Defendant incorrectly suggests the 2013 amendment changed D.C. law  Defendant cites to

a footnote in *Aston v. Johnson* to support its claim that the 2013 amendment precluded any and all

extraterritorial application. MTD at 17 citing *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 57

n. 9 (D.D.C. 2017). However, *Aston* said nothing about the 2013 amendment, and instead cites to

pre-amendment case law. *See* F. Supp. 3d at 57 n. 9 ("*See Shaw v. Marriott Int'l, Inc…* holding

plaintiff 'cannot state a claim under the [D.C. Consumer Protection Procedures Act]' where he 'is

not a citizen of the District' *and the defendant 'is [not] a business entity located in the District*'")

(quoting *Shaw v. Marriott Int'l, Inc.*, 605 F.3d 1039, 1045 (D.C. Cir. 2010)) (emphasis added)

(citation omitted).

      Like *Aston*, *Krukas* did not hold that the 2013 amendment changed D.C. law. Noting the

CPPA's liberal construction, and noting that defendants formulated, conceived, and oversaw their

illegal kickback scheme in D.C., *Krukas* concluded, "[t]hese allegations sufficiently 'aver[ ] that

the defendants' actions *in the District of Columbia* gave rise to [her] claims under the CPPA'" 376

F. Supp. at 35 (emphasis added) (citation omitted). In reaching this conclusion, *Krukas* cites to the

amended language explicitly. *Id.* at 34 ("[t]he defendants argue that the CPPA only 'establishes an

enforceable right to truthful information from merchants about consumer goods and services that

are or would be purchased, leased, or received *in the District of Columbia…*'") (emphasis added) (citation omitted).

Defendant, perhaps recognizing that its arguments regarding *Krukas* and the 2013 amendment are wrong, seeks to tie its lot to a decision under New York law. MTD at 19-20. However, Defendant's arguments as to the state of New York law (inapplicable here anyway) are unavailing since the Second Circuit has already rejected Defendant's reasoning:

> As we explain below, we recognize that a split of authority has developed subsequent to *Goshen* about the appropriate territorial test to employ under sections 349 and 350…. we think the appropriate test in this case [as to whether Section 349 applies to out of state residents] is to focus on the location of the transaction, and in particular the strength of New York's connection to the allegedly deceptive transaction, rather than on the residency of the parties.

*Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 122-23 (2d Cir. 2013) (interpreting *Goshen v. Mutual Life Ins. Co. of New York*, 98 N.Y.2d at 325; *see also People v. Telehublink Corp.*, 301 A.D.2d 1006, 1009 (3d Dep't 2003) ("the interests of New York were implicated when [the defendant] used a New York address to send and receive [misleading] correspondence related to [a] telemarketing scheme."). This Court ruled in a similar fashion to the Second Circuit in *Krukas*, rejecting defendant AARP's claim and allowing for an out-of-state resident to sue under the CPPA.

## 2. Defendant fails to allege a "true conflict", and a conflict of law analysis favors D.C. law were a "true conflict" to exist

"Under District of Columbia law, the first step in a choice-of-law analysis is determining 'whether a true conflict exists between the laws of the [competing] jurisdictions—that is, whether more than one jurisdiction has a potential interest in having its law applied and, if so, whether the law of the competing jurisdictions is different.'" *Krukas*, F. Supp. 3d 1, 27 (D.D.C. 2019) (citations and internal quotations omitted). "A conflict of laws does not exist when the laws of the different jurisdictions are identical or would produce the identical result on the facts presented." *USA Waste*

*of Md., Inc. v. Love*, 954 A.2d 1027, 1032 (D.C. 2008) (footnote omitted). On the other hand, a conflict may be found when two jurisdictions have different applicable laws, which would result in different outcomes. *See id.*

Defendant provides no facts or supporting case law that show how Connecticut law would produce a different result on identical facts. *See* MTD at 21-22. Defendant fails even to state the Connecticut statute under which instant claims would be construed. *See id*. Defendant thus fails to allege a "true conflict." Accordingly, District of Columbia law applies.

Assuming, *arguendo*, a true conflict exists, District of Columbia law applies under the modified interest tests used by D.C. courts. "The governmental interest analysis requires a court to 'evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced by having its law applied to the facts of the case under review.'" *Krukas*, 376 F. Supp. at 28 (quoting *Oveissi v. Islamic Republic of Iran*, 573 F.3d 835, 842 (D.C. Cir. 2009) (internal quotation marks and citation omitted)). "Even if [another state] ha[s] an equal interest as the District of Columbia in applying their own laws, in such a situation the law of the forum state should apply." *Krukas*, 376 F. Supp. at 29 (citations omitted).

In *Krukas*, the court found that "[f]or CPPA claims, '[t]he District of Columbia has an interest in protecting its own citizens from being victimized by unfair trade practices *and an interest in regulating the conduct of its business entities*.'" *Id*. at 28 (quoting *Shaw*, 605 F.3d at 1045) (citation omitted) (emphasis in original). Here, the alleged misrepresentations and illegal kickback scheme all emanated from the District of Columbia. Defendant "formulated, executed, and monitored its kickback scheme in D.C., where it approved and disseminated the marketing materials at issue, and where it received or retained its illegal insurance commissions, among other things." Compl. ¶ 30. Application of the CPPA here thus supports the same government interests

17

as those promoted in *Krukas*.

For similar reasons, the significant relationship test favors application of D.C. law. The factors to be weighed in such an analysis are: "(1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship, if any, between the parties is centered." Restatement (Second) of Conflict of Laws § 145 (1971); *Oveissi*, 573 F.3d at 842; *Washkoviak*, 900 A.2d at 181 ("[A] mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale"). In the event that each jurisdiction has a roughly equal interest in applying their own laws, the law of the forum state must apply. *See id.* at 182 (citing *Logan v. Providence Hosp. Inc.*, 778 A.2d 275, 278 (D.C. 2001). In *Krukas*, the court applied District of Columbia law since, in a uniform misrepresentation case, the place of "the alleged injury is less important than in other tort cases… bolstered by the District of Columbia's interest in regulating companies incorporated under its laws…" 376 F. Supp. 3d at 31-32 (citations omitted). *See also Keene Corp. v. Ins. Co. of N. Am.*, 597 F. Supp. 934, 940 (D.D.C. 1984) (citing Restatement (Second) of Conflict of Laws § 145, Comment (e) (1971)).[4]

Here, a proper analysis of the four factors clearly establishes the District of Columbia as the jurisdiction with the most significant relationship to this case. As in *Krukas*, Defendant's uniform misrepresentations and illegal kickback scheme emanated from the District of Columbia. Compl. ¶ 30. Defendant "formulated, executed, monitored its kickback scheme in D.C.", as well as

---

[4]     Restatement (Second) of Conflict of Laws § 145, Comment (e) (1971), states that the place of *conduct* should be given "particular weight":

> When the injury occurred in two or more states, or when the place of injury cannot be ascertained or is fortuitous and, with respect to the particular issue, bears little relation to the occurrence and the parties, the place where the defendant's conduct occurred will usually be given particular weight in determining the state of the applicable law.

18

"approved and disseminated the marketing materials at issue" in D.C.. *See id*. Consequently, the second factor heavily favors application of D.C. law for an action where "the gravamen of the plaintiff's Complaint is misrepresentation and false advertising." *Krukas*, 376 F. Supp. 3d at 31. The third factor—domicile of the parties—also favors the District of Columbia, since it is where Defendant is incorporated, headquartered, and maintains its primary place of business. Compl. ¶ 31. The fourth factor—where the relationship between the parties is centered—clearly favors the District of Columbia since that is where Defendant formulated its kickback scheme and approved and disseminated the marketing materials that formed the basis of its merchant relationship with its customers.  Compl. ¶ 30. Defendant communications regarding travel insurance emanated from the District of Columbia. *Id*.

Defendant's emphasis on factual discrepancies between the instant scheme and the scheme in *Krukas* is misplaced. MTD at 24-25 ("Plaintiff alleges that Amtrak did not provide services or enter into any contract with customers in connection with the sale of travel insurance"). *Krukas* found its plaintiff's argument more persuasive "based on the *nature* of the claims" (emphasis added). 376 F. Supp. 3d at 28. Since the two schemes have the same underlying *nature* as matters of misrepresentation, factor (2) weighs as heavily in favor of Plaintiff here as it did in *Krukas*..Defendant's emphasis on Plaintiff's location, *see* MTD at 23-24, is likewise unpersuasive since "although this factor weighs in favor of applying [another state's] law, the significance of this result is diminished *because of the nature of the claims*." *Krukas*, 376 F. Supp. 3d at 30 (emphasis added). The District of Columbia's interest in regulating nationwide uniform misrepresentation claims against a resident entity defendant is the critical factor in a choice of law analysis that favor application of D.C. law. *Id*. at 32.

3.      **Defendant is a merchant under the CPPA**

While Defendant claims it is not a merchant, Defendant's conduct more than sufficiently

establishes Defendant as a merchant under the CPPA. The CPPA defines a merchant as "a person,

whether organized or operating for profit or for a nonprofit purpose, who in the ordinary course of

business does or would sell, lease (to), or transfer, either directly or indirectly, consumer goods or

services, or a person who in the ordinary course of business does or would supply the goods or

services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901(a)(3).

As Defendant concedes, "a merchant need not be the actual seller of the goods or services

complained of, but must be connected with the supply side of the consumer transaction." *Hall v.*

*South River Restoration, Inc.*, 270 F. Supp. 3d 117, 123 (D.D.C. 2017); *Baylor v. Mitchell*

*Rubenstein & Assocs.,*857 F.3d 939, 947 (D.D.C. 2017). Further, The CPPA is "construed and

applied liberally to promote its purpose" of "assur[ing] that a just mechanism exists to remedy all

improper trade practices and deter the continuing use of such practices." D.C. Code § 28-

3901(b)(1), (c). In *Krukas*, the defendant, albeit largely a not-for-profit entity, was adequately

alleged to be a merchant "[b]ased on the plaintiff's allegations of the defendants' extensive

involvement in marketing, selling, and administering [insurance] policies to consumers…" 376 F.

Supp. 3d at 38.

Similarly here, Defendant acted as a merchant under the CPPA by soliciting online

consumers to purchase trip insurance, directly inserting itself into an online consumer's decision to

buy insurance by making the election on trip insurance a prerequisite to purchase a ticket online,

administering aspects of the trip insurance purchase process, and receiving a kickback for all

resultant sales from its solicitations. Compl. ¶¶ 20-23. Defendant's solicitations included: (1) an

advisory reading "IMPORTANT: PROTECT YOUR TRIP" (id. ¶ 20); (2) a description of the

insurance as "Highly Recommended" (*id*. ¶ 22); (3) bullet points touting insurance in boldface such as **"Peace of mind**: Insurance for loss, damage or theft of your belongings" (*id*.); and (4) a link to a Boston Globe article urging travelers to purchase travel insurance, (*id*. ¶ 23). And, Defendant doubled down on its solicitations by making consumers decide whether to buy trip insurance as a prerequisite to purchase a rail ticket online. Through these actions, Defendant made repeated, systematic, and uniform representations about trip insurance. *Id*. at ¶ 19; *see also Hall*, 270 F. Supp. 3d at 123. And of course, Amtrak's regular and repeated conduct went far beyond the type of conduct Amtrak suggest in its case citation, where a bank employee's one-time recommendation of a contractor that failed to meet the merchant standard under the CPPA. *See* MTD at 26 (citing *Howard v. Riggs Nat. Bank*, 432 A.2d 701, 709 (D.C. 1981)).

Likewise, Defendant exercised administrative control by forwarding all customers electing to buy insurance to the Allianz website. Compl. ¶ 25. Defendant played a further administrative role by explaining, on Defendant's own receipts, that Defendant had forwarded the travel insurance request to Allianz and that customers would be billed separately for their travel insurance purchase. *Id*. Additionally, by requiring all online customers to affirmatively choose whether to buy insurance before completing their ticket purchase, Defendant made purchase of a travel ticket contingent on evaluation of the insurance Defendant solicited. Compl. ¶¶ 17-18. Defendant thereby "inserted itself into the 'supply side' of the transaction at issue." *Hall*, 270 F. Supp. 3d at 123 (citation omitted). These activities are far more akin to the defendant's conduct in *Krukas* than to the one-off employee referral in *Howard*. Defendant's marketing, sales, and administrative conduct thus more than establish a connection to the supply side of the transaction

Defendant incorrectly suggests that only the defendants' conduct at issue in *Krukas* can give rise to a consumer-merchant relationship. *See* MTD at 28. That conduct included (1) an

explicit agreement to market, sell, and renew insurance policies and (2) authority to oversee the insurance program, including authority over operations, premium levels, and contract modifications with third-party vendors. *Krukas*, 376 F. Supp. 3d at 38. However, a consumer-merchant relationship need not involve a contract with a customer, nor direct provision of services to consumers. *See, e.g., Hall*, 270 F. Supp. 3d at 123; *Calvatti v. Antcliff*, 346 F. Supp. 2d 92, 104-105 (D.D.C. 2004). Rather, defendants "who do more than merely recommend goods and services may qualify as merchants under the CPPA." *Krukas*, 376 F. Supp. 3d at 38, discussing *Adler v. Vision Lab Telecomms., Inc.*, 393 F.Supp.2d 35, 39-40 (D.D.C. 2005). *Krukas* far exceeded this liberal standard, rather than set its baseline. 376 F. Supp. 3d at 38 ("[b]ased on the plaintiff's allegations… the defendants *do far more than* endorse [the insurance] policies") (emphasis added). Plaintiff's allegations here are more than sufficient to establish Defendant as a merchant under the CPPA.

**4.     Plaintiff alleges a material misrepresentation and a material omission under CPPA**

The CPPA prohibits companies from misrepresenting material facts which tend to mislead, fail to state a material fact if such failure tends to mislead, use innuendo or ambiguity as to a material fact which has a tendency to mislead, or misrepresent a material fact which is otherwise misleading. D.C. Code § 28-3904(e), (f), (f-1); Compl. at ¶ 63. The CPPA is a "comprehensive statute designed to provide procedures and remedies for a broad spectrum of practices which injure consumers." *Krukas*, 376 F. Supp. 3d at 34 (citation omitted). This law is expressly intended to "be construed and applied liberally to promote its purpose." *Id*. (quoting D.C. Code § 28-3901(c)). Plaintiff has sufficiently stated the elements of a CPPA claim to survive Defendants' motion to dismiss.

Defendant argues that Plaintiff's Complaint fails to allege a misrepresentation because Plaintiff points only to "accurate" representations. MTD at 29. Defendant is wrong. As explained in her Complaint, Plaintiff alleges that ticket receipts for customers that opted into purchasing travel insurance include a statement that indicates that Amtrak will bill the customer *only* for their cost of the ticket. Compl. at ¶ 25. In other words, "Amtrak then explicitly notes that the cost of the travel insurance is 'Not Charged by Amtrak.'" *Id*. at ¶ 25. Plaintiff alleges that these statements are not accurate. In reality, the purchase of Plaintiff's ticket and travel insurance covered the cost of an unlawful kickback fee, paid from the insurer back to Defendant, and derived from the customer's payment to the insurer. *Id*. at ¶ 12.

Defendant's cited authority provides little guidance. Unlike in *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 441 (D.C. 2013), where the District of Columbia Court of Appeals found that the defendant had not made an express misrepresentation regarding the condition of the properties to be purchased, in the present case, Defendant made an affirmative statement regarding the nature of the transaction that takes place when a consumer purchases Allianz's travel insurance. This is not a situation where the information was merely "incomplete," because Defendant's own statements form the basis for a customer's conclusion that Defendant will not receive a portion of Plaintiff's payment to Allianz.[5]

Moreover, Defendant's statements are misleading because they omit material facts. The commission that Defendant receives is not a mere payment for marketing, as described in Defendant's memorandum, but an illegal kickback that Defendant collects for soliciting its

---

[5] The opinion in *Martin v. Coca-Cola Co.*, 785 F. Supp. 3, 4 (D.D.C. 1992), is also inapposite. In Martin, the court found the plaintiff's claim "claim is nothing short of preposterous" because the advertisement for 25 cents off Coca-Cola products was "truthful, and plaintiff has failed to allege any injury he suffered as a result of their truthful statement."

23

members to purchase Allianz's travel insurance. *See* Compl. at ¶ 12. The statements referenced above are highly misleading and deceptive in that Defendant does not disclose the amounts that customers are paying do not merely cover the cost of the insurance but instead are also utilized to cover a commission fee that Defendant, as an unlicensed broker, is not entitled to collect. *Id*. Defendant's reference to *Flores v. United Airlines* is inapposite. MTD at 30. First, the claims in *Flores* were for a violation of the Illinois Consumer Fraud and Deceptive Trade Practices Act, 2019 WL 6716608, at *1, which does not extend the same "right to truthful information" that the DC CPPA provides. §28-3901(c). Second, the ICFA clearly requires that a plaintiff demonstrate a defendant's "intent that the plaintiff rely on the deception," and as Defendant itself recognizes, the CPPA prohibits deceptive trade practices "whether or not any consumer is in fact misled, deceived or damaged thereby." MTD at 31; D.C. Code § 28-3904. Moreover, "the CPPA was intended to overcome the pleadings problems associated with common law fraud claims by eliminating the requirement of proving certain elements such as intent to deceive and scienter." *Campbell v. Nat'l Union Fire Ins. Co.*, 130 F. Supp. 3d 236, 267 (D.D.C. 2015) (quoting *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 n.20 (D.C. 2008). Finally, Defendant's interpretation of the *Flores* decision would contradict this District's prior case law. Defendant does not contend, as it cannot, that it actually disclosed the fee that it received from the sale of travel insurance. Compl. at ¶ 13. Thus, although it might be true that not every commission is an illegal kickback, Plaintiff has sufficiently alleged so in this case.[6] As

---

[6] As Plaintiff alleges , Defendant aggressively pushes Allianz's travel insurance onto its customers by requiring that customers make an election regarding travel insurance, communicating to each customer the importance of protecting their trip, labeling the rejection option as "No, I choose not to protect my trip to [city]," labeling the acceptance option as "Highly Recommended," and quoting the Boston Globe to urge customers to "Purchase travel insurance." Compl. at ¶¶ 14-23.

in *Krukas*, the Court should find that Plaintiff has sufficiently "alleged that the defendant[]

solicit[ed] insurance without being licensed to do so…."

Furthermore, that Defendant receives an illegal kickback is a material fact under the laws

of the District of Columbia. Defendant's arguments to the contrary fail. First, Defendant claims,

by citing to *Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 256 (D.C. 2013), that the receipt of illegal

kickbacks is a legal conclusion and not a fact. However, *Floyd* is not analogous to the present

situation, because there, the Court determined that privacy risk exposure was not a "fact"

pursuant to the CPPA as the defendant did not possess special knowledge of threats to consumers

and their data. 70 A.3d at 255. In the present case, there is no condition to or missing component

to the fact that Defendant received an illegal kickback. Compl. at ¶ 13. Here, it is a fact that

Defendant received a commission from Allianz for the sale of travel insurance on their website,

and it is a fact that Defendant was not permitted to do so. Quite simply, whether a consumer's

payment to Defendant creates a commission is a matter of fact. *See Gordon v. Dist.

Unemployment Cop. Bd.*, 402 A.2d 1251, 1257 (D.C. 1979) (a commission "in the ordinary sense

of the word" is "compensation based on percentages of an amount collected, received or agreed

to be paid for results accomplished") (citation omitted).

Second, Defendant's argument that Plaintiff has not met the CPPA's materiality

requirement fails. As Defendant recognizes, in determining whether a fact is material, D.C.

courts have inquired whether "a significant number of unsophisticated consumers would find that

information important in determining a course of action." *Mann v. Bahi*, 251 F. Supp. 3d 112,

126 (D.D.C. 2017) (*quoting Saucier*, 64 A.3d at 442). Furthermore, in the District of Columbia, a

fact is material if:

> (a) a reasonable man or woman would attach importance to its
> existence or nonexistence in determining his [or her] choice of

> action in the transaction in question; or (b) the maker of the
> representation knows or has reason to know that its recipient
> regards or is likely to regard the matter as important in
> determining his or her choice of action, although a reasonable
> man or woman would not so regard it.

*Id.* at 431. Although the question of materiality may, in specific situations, be determined as a matter of law, "[h]ow the practice would be viewed by a reasonable consumer is generally a question for the jury." *Krukas*, 376 F. Supp. 3d at 39 (quoting *Mann*, 251 F. supp. 3d at 126), *see also Saucier*, 64 A.3d at 442. "Ordinarily the question of materiality should not be treated as a matter of law." *Id*.

Regardless of Defendant's characterization, the instant case is nearly identical to *Krukas.* As in *Krukas*, Defendant's actions constitute the receipt of an illegal kickback from Allianz in exchange for brokering the insurance sale. Also, similarly to *Krukas*, the illegal commission that Defendant received was funded every time a customer elected to purchase travel insurance. Compl. at ¶ 28. Defendant's distinctions are immaterial. Based on Defendant's misrepresentation and omissions, reasonable consumers, like Plaintiff, would lack the understanding that a portion of the cost for the travel insurance would be returned or retained by Defendant. *See Krukas*, 376 F. Supp. at 41. Just as in *Krukas*, the value of the illegal commission would impact the price paid by customers. Whether Defendant's commission is legal and its effect on the price paid by customers are both material to a customer's decision. Defendant cannot claim that the cost of the product, as affected by the inclusion of an illegal kickback, is not a material fact for a consumer. In fact, the DC Court of Appeals has made clear that costs are "presumed [material]" for purposes of analyzing violations of sections 5 and 12 of the Federal Trade Commission Act, which is given due consideration and weight when construing an "unfair and deceptive

practice"[7]. *Novartis Corp. v. FTC*, 223 F.3d 783, 786 (D.C. 2000); *see also Concordia Pharms., Inc. v. Method Pharms., LLC*, 2016 U.S. Dist. LEXIS 41904 (W.D. Va., Mar. 29, 2016) (finding that the price of pharmaceuticals would likely influence purchasing decisions).

Even were the Court to agree with Defendant, it is well-established under the CPPA that "a merchant that presents misleading information about its services in violation of another statute commits an unlawful trade practice, even if that statute is not specifically enumerated elsewhere in the CPPA." *Mann*, 251 F. Supp. 3d at 121; *see also Osbourne v. Capital City Mortg. Corp.*, 727 A.2d 322, 325-26 (D.C. 1999) ("[T]he CPPA's extensive enforcement mechanisms apply not only to the unlawful trade practices proscribed by § 28-3904, but to all other statutory and common law prohibitions."). Here, Plaintiff alleged that Defendant is not a licensed insurance broker in the District of Columbia, precluding it from engaging in the solicitation of insurance or accepting a commission for the sale or renewal of an insurance policy under the operative statutory scheme. Compl. at ¶ 12; *see also* D.C. Code § 31-1131.13 (b); D.C. Code § 31-2502.31; D.C. Code § 31-1131.03. Nevertheless, Defendants unlawfully collected commissions from the sale of Allianz travel insurance on their websites – an act that Defendant could not have done had it made truthful representations and acted within the bounds of the law. Compl. at ¶ 37. This Court recently held that similar facts were enough to survive summary judgment, so they are surely enough to withstand a motion to dismiss. *See Mann*, 251 F. Supp. 3d at 122, 126 (finding that whether business's lack of license constituted CPPA violation was for a jury's determination).

Finally, even assuming *arguendo* that the Court were to find Defendants' acts and omissions were not (or did not tend to be) *deceptive*, the Court should find that they were *unfair*.

---

[7] *See* D.C. Code § 28-3901(d).

Recent amendments to the CPPA added a prohibition on unfair consumer transactions. *See* 65 D.C. Reg. 5970. The Council said this was done to "protect consumer independence by stopping business practices that impede a consumer's ability to make informed choices." *See* Report on Bill 220185, available at http://chairmanmendelson.com/wp-content/uploads/2018/03/B22-185-Consumer-Protection-Clarification-and-Enhancement-Amendment-Act-Packet.pdf (last accessed Jan. 29, 2020). Here, Plaintiff alleges that Defendant's acts and omissions, at minimum, impede a consumer's ability to make informed choices by not disclosing the commission.

5.    **Plaintiff has sufficiently alleged an injury**

Plaintiff has standing to pursue her CPPA claim. To demonstrate a showing of standing, she must show "(1) an injury in fact (2) that is fairly traceable to the challenged conduct of the defendant and (3) that is likely to be redressed by a favorable judicial decision. *Krukas*, 376 F. Supp. at 35-36." While Defendant is correct that Plaintiff must have a concrete injury-in-fact to establish Article III standing, Plaintiff has sufficiently alleged as much.  An "injury-in-fact" can be shown, in part, by an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Windsor*, 570 U.S. at 757. D.C. courts have found that, under Article III, "one manifestation of injury in fact is the violation of legal rights created by statute." *Grayson*, 15 A.3d at 234.

As in *Krukas*, Plaintiff was financially harmed by Defendant's unlawful practices, misleading her to fund an illegal commission and violating her right to truthful information. Compl. at ¶ 73. Plaintiff either would not have purchased travel insurance through Defendant's website or would have paid less but for the illegal commission for that insurance had Defendant

made truthful representations and acted within the bounds of the law.[8] Thus, Plaintiff has

sufficiently alleged that she and the putative class overpaid. Because financial harm is a

paradigmatic example of injury-in-fact, Plaintiff has amply demonstrated standing.[9]

Second, the CPPA establishes "an enforceable right to truthful information from merchants

about consumer goods and services . . . ." D.C. Code § 28-3901(c). Courts in D.C. have recognized

that a Plaintiff's injury derived from a violation of her statutory legal right to truthful information

as created by the CPPA, constitutes an injury-in-fact for standing purposes. *Grayson*, 15 A.3d at

248-49 ("[I]n terms of standing in this case, Mr. Grayson's injury is derived solely from a violation

of an invasion of his statutory legal rights created by the CPPA.") (citing, among other authorities,

*Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982); *Zuckman v. Monster Bev. Corp.*, 2016

D.C. Super. LEXIS 10 (D.C. Super. Ct. Aug. 12, 2016) (finding that defendant's alleged violation

of plaintiff's statutory right to truthful information concerning energy drinks alleged sufficiently

---

[8] Defendant repeatedly mischaracterizes Plaintiff's allegations. The issue in this case is not whether Plaintiff did or did not know that Amtrak permitted Allianz "to advertise travel insurance on its website for free," but rather that Defendant failed to disclose its unlawful commission arrangement with Allianz or the extent to which Plaintiff's purchase of Allianz's insurance contributed to this arrangement. *See* MTD at 30-31.

[9] Furthermore, Defendants' reliance on *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003) is misplaced because, there, unlike here, the plaintiff did not plead direct financial loss from material omissions and misrepresentations and also because the plaintiff did not plead injury from the deprivation of truthful information. Subsequent case law has firmly established that this is sufficient to allege an injury properly. *See, e.g., Mann*, 251 F. Supp. 3d at 119 (allegations that plaintiff's agent was actually misled by misrepresentations and omissions and suffered financial harm as a result sufficient). Similarly, *Austin-Spearman* is inapposite because Plaintiff does not allege that she has not received "the benefit of the bargain." 119 F. Supp. 3d at 12-13. Instead, Plaintiff alleges that she and the putative class overpaid because she would not have purchased Allianz travel insurance and contribute to Defendant's unlawful commission scheme had Defendant not misrepresented its policies. Defendant's misrepresentations are not a matter of performance, as in the case of *Austin-Spearman*, but instead a matter of undisclosed unlawful and deceptive practices in violation of the CPPA and the fact that Plaintiff and the class had to unknowingly fund those illegal practices, thereby artificially increasing the cost to plaintiff and the class.

concrete harms to satisfy the "injury-in-fact requirement of Article III standing"); *Campbell*, 130 F. Supp.at 252 (collecting authority for the proposition that "unauthorized charges and allegedly material misrepresentations about the program constitute injuries in fact for standing purposes."); *Smith v. Hi-Tech*, No. 2016-CAB-006862 (D.C. Super Ct.) (May 26, 2017) ("it still remains that the right to truthful information is a right of the consumer and the deprivation of that is an injury in fact.") (Exhibit 1 hereto). Here, Plaintiff adequately alleges an injury-in-fact because she contends that, as a result of the deceptive trade practices of Defendant, Plaintiff and class members have been deprived of truthful information regarding their choice to purchase travel insurance. Compl. at ¶ 72. Thus, even if this Court finds that an informational injury such as a violation of this right to truthful information, without more, is not sufficient to demonstrate standing (though it is under *Havens* which remains good law), Plaintiff also alleges that she has suffered pecuniary harm as a result. *See Krukas*, 376 F. Supp at n.12. Accordingly, these allegations are sufficient to overcome defendant's challenge of standing at the motion to dismiss stage. At minimum, drawing all inferences in Plaintiff's favor as required at the motion to dismiss stage, the Court should find that Plaintiff has alleged injury and has standing.

## D.    Plaintiff Has Properly Stated A Claim for Conversion

Plaintiff has sufficiently pleaded a claim for conversion under D.C. law. "Conversion is 'any unlawful exercise of ownership, dominion or control over the personal property of another in denial or repudiation of his rights thereto.'" *Bucheit v. Palestine Liberation Org.*, 388 F.3d 346, 349 (D.C. Cir. 2004) (quoting *Duggan v. Keto*, 554 A.2d 1126, 1137 (D.C. 1989)). Further, "[a] defendant will be liable for conversion if the plaintiff shows that the defendant participated in (1) an unlawful exercise, (2) of ownership, dominion, or control, (3) over the personal property of another, (4) in denial or repudiation of that person's rights thereto." *Johnson v. McCool*, 808 F.

Supp. 2d 304, 308 (D.D.C. 2011) (internal citations and quotations omitted). Money may be the subject of a conversion claim where the plaintiff has the right to a specific identifiable fund of money. *Krukas*, F. Supp. 3d at 43 (citing *Papageorge v. Zucker*, 169 A.3d 861, 864 (D.C. 2017)).

Defendant is incorrect to assert Plaintiff failed to establish Defendant's wrongful dominion or control over Plaintiff's funds. Defendant's unlawful receipt of commissions, accomplished only by way of misrepresentations and material omissions, establish Defendant's dominion over Plaintiff's money. (Compl. ¶ 12). *See, e.g., Krukas*, 376 F. Supp. 3d at 43 (holding that defendant was sufficiently alleged to have dominion and control over commissions received through health insurance scheme). *McNamara v. Picken*, 950 F. Supp. 2d 193 (D.D.C. 2013), cited by Defendant, is inapposite since it was decided on a motion for summary judgment **after** discovery had been conducted. The standard applied in *McNamara* is vastly different than the relevant standard here. *Compare* Fed. R. Civ. P. 12(b)(6) *with* Fed. R. Civ. P. 56. No discovery has been taken in this action yet. Thus, the Court should disregard this argument.

Though Defendant asserts otherwise, Plaintiff has also established her right to an identifiable fund of money. At a minimum, the illegal kickback received by Defendant is a specific, identifiable source of money (i.e. a percentage of the trip insurance charge paid by Plaintiff), which Defendant unlawfully took and retained from Plaintiff and denied her rights thereto, and is sufficient to state a claim for conversion. *See Krukas*, 376 F. Supp. 3d at 43. In *Krukas*, the court held that a plaintiff deceived into paying this same type of undisclosed, illegal insurance commission had sufficiently identified the right to a specific identifiable fund of money. 376 F. Supp. 3d at 43. Here, Plaintiff has alleged a right to just such an illegal commission that is clearly identifiable. (*See* Compl. ¶¶ 12, 77–78). Further, Defendant's reliance on *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 31 (D.D.C. 2014) is misplaced. In *Edwards*, the plaintiff

claimed to be owed money from a larger fund of property settlement proceeds. *Id.* at 30. Here, by contrast, Defendant unlawfully took and retained money from Plaintiff.

Under the pleaded facts, Plaintiff has sufficiently alleged that Defendant wrongly exercised dominion or control over this identifiable source of money.

## E.    Plaintiff States a Claim for Unjust Enrichment

Plaintiff satisfies each required element to state a valid unjust enrichment claim.  Unjust enrichment requires that "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v.  Thompson*, 878 A.2d 1218, 1222 (D.C. 2005); *see also Rothberg v. Xerox Corp.*, 2016 WL 10953882, at *20 (D.D.C. Feb. 3, 2016), *aff'd*, 709 F. App'x 1 (D.C. Cir. 2017) ("The circumstances that would render a defendant's enrichment unjust turns on whether the defendant received the benefit as a result of a wrongful act giving rise to the duty to make restitution") (quotations and citation omitted).

Here, Plaintiff adequately alleged all three elements. First, Plaintiff alleged that she and the class members "conferred a benefit on Amtrak by funding Amtrak's illegal kickback . . ." Compl. ¶¶ 12, 82.  This is sufficient to allege a direct benefit.  *See Zamber v. Am. Airlines, Inc.*, 282 F. Supp. 3d 1289, 1301 (S.D. Fla. 2017) ("[M]oney was transferred from Plaintiff's pocket and into American's. That is sufficient to confer a direct benefit.").  Plaintiff also alleged that "Defendant voluntarily accepted and retained this benefit."  Compl. at ¶ 83.  Finally, Plaintiff alleged that "it would be inequitable for the Defendant to retain [the benefit] without paying the value thereof to Plaintiff and the proposed class." *Id.* ¶ 84.

Amtrak's three points arguing for dismissal of this count are unavailing.  First, it argues that Plaintiff's unjust enrichment claim fails because her CPPA claim fails.  MTD at 35.  Though

Plaintiff's CPPA claims are well-plead, *see* Sec. IV C *supra*, Plaintiff's unjust enrichment claim is independent of its CPPA claim. *See Krukas*, 376 F. Supp. 3d at 44. (holding an unjust enrichment claim was properly plead in an analogous context). Next, Amtrak argues that Plaintiff failed to allege facts establishing a detriment because she received the full value of her bargain and because her allegations regarding Defendant's overcharge do not give rise to a cognizable detriment. *See* MTD at 35-36.  However, Plaintiff alleges a cognizable detriment not by virtue of a lost benefit of the bargain for faulty performance, but by virtue of Defendant's deceptive overcharge that included an illegal kickback. Compl. at ¶ 32. This deception resulted in direct monetary loss. *See, e.g.*, *Jetblue*, 385 F. Supp. 3d at 1352 (quoting <u>*Zamber*</u>, 282 F. Supp. 3d at 1301) ("Thus 'even if [a] consumer is willing to pay the total price (with the overcharge) for the product or service,' the misrepresentations or omissions related to the purported 'pass-through' charge render the retention of the overcharge inequitable"); *Krukas*, 376 F. Supp. 3d at 44.

Finally, Amtrak is incorrect that Plaintiff failed to allege that Amtrak engaged in deceptive conduct.  MTD at 37. Plaintiff details in Sec. IV. C4 *supra* Defendant's deceptive conduct. These allegations establish an inequity for purposes of stating an unjust enrichment claim.  *See, e.g., Delta*, 2019 U.S. Dist. LEXIS 114549 at *24 ("Plaintiffs' allegations that Delta has created and maintained a deceptive "pass-through" scheme suffices to show unjust enrichment at the pleading stage."). Further, contrary to Defendant's assertions, Plaintiff alleges both that Plaintiff herself was deceived, Compl. ¶¶ 32, 37,  and that a reasonable customer would have been deceived by Defendant's conduct. Compl. ¶ 67. These facts, which must be taken as true, are sufficient to show that an "ordinarily prudent person" would not simply assume that Amtrak receives an illegal commission from the insurance Amtrak solicits and would not assume

that Amtrak was acting unlawfully, *See Fingerhut v. Children's Nat'l Med. Ctr.*, 738 A.2d 799,

803 (D.C. 1999) ("The allegations in the complaint must be taken as true and construed in the

light most favorable to the plaintiff") (internal quotation omitted).

Accordingly, Plaintiff plainly can plead unjust enrichment based on Amtrak's overcharge

to Plaintiff and the nationwide class that included illegal kickbacks.

## F.    Plaintiff has Adequately Alleged Fraudulent Concealment

Contrary to Defendant's assertion, the District of Columbia does recognize an

independent cause of action for fraudulent concealment and Plaintiff's allegations are well-plead.

*See e.g., Alford v. Providence Hosp.,* 945 F. Supp. 2d 98, 110 (D.D.C. 2013), aff'd, 561 F. App'x

13 (D.C. Cir. 2014) (citing elements of fraudulent concealment)*; Alexander v. Washington Gas*

*Light Co*., 481 F. Supp. 2d 16, 36–37 (D.D.C. 2006), aff'd, No. 06-7040, 2006 WL 3798858

(D.C. Cir. Aug. 24, 2006) (same).[10]   In D.C., fraudulent concealment requires:

> (1) the defendant had a duty to disclose a material fact to the plaintiff; (2) the
> defendant failed to disclose the fact; (3) the defendant had an intention to defraud
> or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the
> concealment; and (5) the plaintiff suffered damages as a result of the
> concealment.

*Alford,* 945 F. Supp. 2d at 110.  A duty to disclose arises "when there is some special

relationship or contact between the parties justifying the imposition of a duty" such as when

---

[10] Defendant cites *Cannon v. Wells Fargo Bank, N.A*., 926 F. Supp. 2d 152 (D.D.C. 2013) to
support its position that fraudulent concealment does not constitute an independent cause of
action. *Cannon* does not stand for this proposition.  In *Cannon*, the Plaintiff failed to respond at
all to Defendants' argument that fraudulent concealment is not a cause of action, thereby
automatically waiving the issue.  926 F. Supp. at 172 n. 7.  *Hopkins v. Women's Div., Gen. Bd. of
Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003), the case *Cannon* cites to in support of
dismissing the fraudulent concealment claim also only stands for the point that if you don't
respond to an argument in an opposition you have effectively conceded that point, not that
fraudulent concealment is not an independent cause of action.

there is a fiduciary relationship or "'an instance where a material fact is unobservable or undiscoverable by an ordinarily prudent person upon reasonable inspection.'" *Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 187 (D.D.C. 2016) (citation omitted). A defendant may also have a duty to speak "as a result of a partial disclosure." *Id.* (citation omitted).

Plaintiff alleges that Defendant had a duty to disclose because: (1) it was a party to the transaction with Plaintiff and had special knowledge of the kickback; and (2) because it made partial representations to Plaintiff. *See e.g.*, Compl., ¶¶ 26-29, 25-37, 92. Defendant was a party to the transaction because it received a kickback of a portion of the money Plaintiff and class members paid for travel insurance and because Defendant made representations that the cost of travel insurance is "Not Charged by Amtrak." Compl. ¶ 25. Without further clarification, a reasonable consumer would assume that this statement meant that Amtrak did not receive any money for travel insurance. *Id.*, ¶¶ 25-26, 37; *Krukas*, 376 F. Supp. 3d at 46. As to damages, Plaintiff does not merely allege she would have sought less expensive travel insurance had she known of the kickback scheme, but alleges that had she known of the scheme ***she may not have paid anything at all for travel insurance.*** Indeed, the damage is the fact that some of the payment was siphoned off not for insurance payments but to pay Amtrak its undisclosed and illegal commissions. More particularity at this stage should not be required. *Sheraton Operating Corp. v. Just Corp. Travel*, 984 F. Supp. 22, 24 (D.D.C. 1997) (plaintiff "does not have to prove exact damages" at motion to dismiss stage).

## V.    CONCLUSION

For the above state reasons, Plaintiff respectfully requests that the Court deny Defendant's motion in its entirety. To the extent that the Court is inclined to grant any part of Defendant's motion, Plaintiff requests the opportunity to amend her Complaint.

Dated: February 7, 2019                    Respectfully submitted,

                                           /s/ Nicholas A. Migliaccio
                                           Nicholas A. Migliaccio
                                           D.C. Bar No. 484366
                                           Jason S. Rathod
                                           D.C. Bar No. 100082
                                           **Migliaccio & Rathod LLP**
                                           412 H St. NE, Suite 302
                                           Washington D.C. 20002
                                           Telephone: (202) 470-3520
                                           Facsimile: (202) 800-2730
                                           jrathod@classlawdc.com
                                           nmigliaccio@classlawdc.com

                                           Kevin Landau
                                           Brett Cebulash
                                           Miles Greaves
                                           **Taus, Cebulash & Landau, LLP**
                                           80 Maiden Lane, Suite 1204
                                           New York, NY 10038
                                           Telephone: (646) 873-7654
                                           Facsimile: (212) 931-0703
                                           bcebulash@tcllaw.com
                                           klandau@tcllaw.com
                                           mgreaves@tcllaw.com

                                           Marc L. Godino
                                           **Glancy Prongay & Murray LLP**
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, CA 90067
                                           Telephone: (310) 201-9150
                                           Facsimile: (310) 201-9160
                                           Email: mgodino@glancylaw.com

                                           Rosemary M. Rivas
                                           **Levi & Korsinsky, LLP**
                                           388 Market Street, Suite 1300
                                           San Francisco, CA 94111
                                           Phone: (415) 373-1671
                                           Fax: (415) 484-1294.
                                           rrivas@zlk.com

                                           Daniel C. Hedlund
                                           David A. Goodwin
                                           Mickey L. Stevens

**GUSTAFSON GLUEK PLLC**
120 South Sixth Street #2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
mstevens@gustafsongluek.com

*Attorneys for Plaintiff*

37

## CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2020, I caused a true and correct copy of Plaintiff's

Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss

Plaintiff's Class Action Complaint to be served on all counsel of record through the Court's

CM/ECF system.

/s/ *Nicholas A. Migliaccio*
Nicholas A. Migliaccio
D.C. Bar No. 484366
**Migliaccio & Rathod LLP**
412 H St. NE, Suite 302
Washington D.C. 20002
Telephone: (202) 470-3520
Facsimile: (202) 800-2730
nmigliaccio@classlawdc.com